# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

HSBC Bank, National Association, as Trustee for Structured Adjustable Rate Mortgage Loan Trust 2004-12,

    Plaintiff

v.

Stratford Homeowners Association; SFR Investments Pool 1, LLC,

    Defendants

All other claims and parties

Case No.: 2:15-cv-01259-JAD-BNW

**Order Granting in Part and Denying in Part Motions for Summary Judgment and Denying Motion for Default Judgment**

[ECF Nos. 95, 96, 97]

HSBC Bank brings this action to challenge the effect of the 2013 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] The bank sues foreclosure-sale purchaser SFR Investments Pool 1, LLC, seeking a declaration either that the sale was invalid or that SFR purchased the property subject to the bank's security interest, and SFR countersues for a declaration that it owns the property free and clear of the bank's interest. The bank and SFR crossmove for summary judgment on their quiet-title claims, and SFR also asks for a default judgment on its crossclaim against foreclosed-upon homeowner, Shu Qiong Xu. I find that the bank has failed to demonstrate its entitlement to summary judgment in its favor on this record and that genuine issues of fact regarding the circumstances surrounding fairness of the foreclosure sale preclude complete summary judgment in favor of SFR. So I deny the parties' motions for summary judgment on all but HSBC's due-process-violation theory, deny SFR's motion for default judgment as premature in light of the unsettled issues, and order the parties to a mandatory settlement conference with the magistrate judge.

---

[1] ECF No. 7 (amended complaint).

**Factual and Procedural Background**

**A.   The HOA foreclosure**

Shu Qiong Xu purchased the home at 644 Vincents Dream Avenue in North Las Vegas, Nevada, in 2004 with a $150,768 loan from Silver State Mortgage, secured by a deed of trust that designated Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary.[2] MERS assigned that deed of trust to Nationstar Mortgage LLC in March 2013,[3] and Nationstar further assigned it to HSBC Bank USA, National Association, as Trustee for Structured Adjustable Rate Mortgage Loan Trust 2004-12, in December 2014.[4] The home is located in the Stratford common-interest community and subject to the declaration of covenants, conditions, and restrictions (CC&Rs) for the Stratford Homeowners' Association.[5]

The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure to enforce such a lien.[6] After the assessments on this home became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 on March 7, 2012.[7] The home was ultimately sold to SFR at the foreclosure sale on August 31, 2013.[8] Although the parties state that SFR paid just

---

[2] ECF No. 96-1 at 3 (deed of trust).
[3] ECF No. 96-2 (first assignment).
[4] ECF No. 96-3 (second assignment).
[5] ECF No. 97-1 (recorded CC&Rs).
[6] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).
[7] ECF No. 96-6 (notice of lien for delinquent assessments).
[8] ECF No. 96-13 (foreclosure deed upon sale).

$17,000 for the property,[9] the "Total Value/Sales Price of Property" reflected on the Declaration of Value states $85,891.00.[10]

**B.    The parties' claims**

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[11]  The bank brings this action to save its deed of trust from extinguishment, and SFR counterclaims for a determination that the property is unencumbered by the interest of the bank or the foreclosed-upon homeowner.  After various dismissals, the bank and SFR are left with competing quiet-title claims[12] of the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—actions "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[13]  The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[14]

---

[9] ECF No. 96-15 at 7 (Answer to Interrogatory No. 12).

[10] *Id*. at 3.

[11] *SFR I*, 334 P.3d at 419.

[12] ECF No. 7.  The bank's amended complaint also includes claims for wrongful foreclosure and breach of NRS 116.1113, but those claims were dismissed on the HOA's motion.  *See* ECF No. 43.  SFR's cross-claim also includes a claim for slander of title, but that claim has been dismissed, too.  *See* ECF Nos. 10, 99.  Although both the bank and SFR assert claims for declaratory and injunctive relief, declaratory and injunctive relief as pled here are remedies, not independent causes of action, so I treat those claims as prayed-for remedies for their respective quiet-title claims.

[13] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[14] *Id*. at 1112.

3

**C.     The competing summary-judgment motions**

Discovery has closed,[15] and the bank and SFR cross-move for summary judgment. The bank offers three reasons why I must hold that the HOA foreclosure sale did not extinguish its deed of trust: (1) the sale of the HOA's accounts receivable to non-party First 100 satisfied and extinguished the superpriority portion of the HOA's lien, so only the subpriority portion sold at foreclosure; (2) unfairness plus a grossly inadequate sales price compel the court to set aside the sale under the Nevada Supreme Court's holding in *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*[16]; and (3) the statute under which this HOA foreclosure sale occurred was unconstitutional.[17] SFR disputes each of these propositions[18] and asks for judgment in its favor, arguing that the bank's deed of trust was extinguished by the foreclosure sale as a matter of Nevada law and presumptions and that the bank's constitutionality challenge is based on outdated law.[19]

**Discussion**

**A.     Standards for cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[20] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that

---

[15] *See* ECF No. 90 at 2 (noting that discovery closed 7/13/16).

[16] *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641 (Nev. 2017).

[17] ECF No. 96.

[18] ECF No. 102.

[19] ECF No. 97.

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

4

demonstrate the absence of a genuine issue of material fact.[21] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[22]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[23] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[24] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[25] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[26]

---

[21] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[22] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[23] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[24] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[25] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[26] *Celotex*, 477 U.S. at 322.

**B.     The bank's motion for summary judgment [ECF No. 96]**

   *1.     The bank has not established a tender of the superpriority lien amount.*

As its first summary-judgment argument, the bank relies on a tender theory. The tender theory recognizes that, in order for an HOA's non-judicial foreclosure sale to wipe out the first deed of trust, the HOA must be foreclosing on the superpriority portion of the lien. But if the full superpriority portion of the lien has been paid off before the sale, that tender "cure[s] the default," so "the HOA's foreclosure on the entire lien result[s] in a void sale as to the superpriority portion."[27] The net result of such a tender is that the "first deed of trust remain[s] after foreclosure" and the foreclosure-sale buyer purchases the property subject to the deed of trust.[28]

The bank didn't tender the superpriority portion of the HOA lien on this property before the foreclosure sale. It contends instead that the superpriority portion of the HOA's lien was satisfied when the HOA sold various of its delinquent accounts receivable to First 100 a month before the foreclosure sale. The First 100 purchase agreement reflects that this property was in arrears $870 in overdue assessments, plus collection fees of $1,875.36, and the HOA sold its right to collect that balance for just $414.[29] The bank notes that the Nevada Supreme Court found in its unpublished decision in *Saticoy Bay LLC Series 2141 Golden Hill v. JPMorgan Chase Bank* that evidence that the homeowner "made payments sufficient to satisfy the superpriority component of the HOA's lien and that the HOA applied those payments to the

---

[27] *Bank of Amer. v. SFR Invs. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113, 121 (Nev. 2018).
[28] *Id.*
[29] ECF No. 96-9 at 13.

6

superpriority component" of the balance cured the default, saving the bank's interest from extinguishment through foreclosure.[30] It reasons that "[t]he same logic should apply here."[31]

But even if I were to find that First 100's purchase of a delinquent account could qualify as a superpriority-lien-curing tender,[32] there is no evidence in the record that any portion of First 100's $414 purchase price was applied, or intended to be applied, to the superpriority portion of the lien for this delinquent account. The recitation in the agreement that the HOA "anticipates that" it may later receive payments on this account "in the future . . . via a foreclosure sale conducted pursuant to NRS §116.3116 *et. seq.*"[33] suggests that no lien is being satisfied by this purchase. And, indeed, because the point of the First 100 agreement was to purchase and collect this outstanding balance, the notion that the account balance or the lien that accompanies it was satisfied by the purchase is illogical. These genuine issues of fact preclude me from granting summary judgment in favor of the bank on a tender theory.

### *2.    The bank has not established that it is entitled to set aside the sale under Shadow Canyon.*

The bank next contends that the court should set aside the sale because SFR purchased the property at a grossly inadequate price and the sale was plagued with irregularities that

---

[30] *Saticoy Bay LLC v. JPMorgan Chase Bank*, 2017 WL 6597154 (unpublished) (Nev. Dec. 22, 2017).

[31] ECF No. 96 at 5.

[32] I do not and need not so hold at this juncture. I also recognize that the Nevada Supreme Court held in *9352 Cranesbill Trust v. Wells Fargo Bank*, 136 Nev. Adv. Op. 8 (Nev. Mar. 5, 2020), that a homeowner can cure a superpriority lien default with a properly appropriated payment, essentially validating the *Golden Hill* rule with a published opinion. If anything, *Cranesbill* bolsters my conclusion that HSBC's failure to demonstrate that First 100's payment satisfied the superpriority portion of the HOA's lien precludes summary judgment in its favor on this tender theory because the *Cranesbill* panel emphasized the detailed analysis that can undergird a court's allocation determination.

[33] ECF No. 96-9 at 2.

7

rendered it unfair. This price-plus-irregularities theory is grounded in the Nevada Supreme Court's holding in *Shadow Canyon* that, although inadequacy in price alone will not justify setting aside a foreclosure sale, "where the inadequacy of the price is great, a court may grant relief based on slight evidence of fraud, unfairness, or oppression" that affected the sale.[34] The court must "analyze the totality of the circumstances when determining whether to set aside an HOA foreclosure sale on equitable grounds."[35] As the Nevada Supreme Court clarified in *Resources Group, LLC v. Nevada Association Services, Inc.*, "if the totality of the circumstances demonstrates that the sale itself was affected by 'fraud, unfairness, or oppression,' then a court may set the sale aside. This has been the rule in Nevada since 1963."[36]

The bank argues that the property was worth $114,000 based on its appraisal, so SFR's $17,000 purchase price was grossly inadequate.[37] It adds that uncertainties in Nevada lien-foreclosure law at the time the HOA foreclosed, coupled with a mortgage-protection clause in the CC&Rs and the written representation by the HOA's foreclosure agent Red Rock Financial Services that the HOA's lien on this property "is [j]unior" to the mortgage,[38] establish the fraud or oppression required to set aside the sale under *Shadow Canyon*.

Even if I agreed that SFR's purchase price was grossly inadequate and that Red Rock's representation that the HOA's lien was junior to the deed of trust establishes the unfairness that Nevada law requires for a foreclosure sale to be set aside, the bank is still missing one required

---

[34] *Shadow Canyon*, 405 P.3d at 646–47.

[35] *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nevada Ass'n Servs., Inc.*, 437 P.3d 154, 160 (Nev. 2019) (citing *Shadow Wood*, 366 P.3d at 1114).

[36] *Id*. at 160–61.

[37] ECF No. 96 at 6.

[38] *Id*. (citing ECF No. 96-8 at 2).

8

element: it has offered nothing to show that this unfairness impacted the sale. As the *Shadow Canyon* court explained, "if the district court closely scrutinizes the circumstances of the sale and finds no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside, regardless of the inadequacy of price."[39] The bank points to nothing in the record that would suggest that it sat on its hands—or that anyone else connected to this sale acted or failed to act—in reliance on the CC&R's or Red Rock's vague statement about lien priority. Plus, I am not persuaded that those representations could have affected the sale because everyone "is presumed to know the law,"[40] and Nevada law provided that (1) HOA superpriority liens are "'prior to all other liens and encumbrances[,]' . . . even a first deed of trust" (NRS 116.3116(2)),[41] and (2) HOA rights cannot be waived by agreement (NRS 116.1104).[42] So, the bank has not shown that it is entitled as a matter of law to set aside the foreclosure sale based on a *Shadow Canyon* price-plus-unfairness theory either.[43]

---

[39] *Id*. at 648–49.

[40] *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one [sic] is presumed to know the law and this presumption is not even rebuttable.").

[41] *SFR I*, 334 P.3d at 410.

[42] *See JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 2018 WL 1448728, 414 P.3d 812 (unpublished) (Nev. Mar. 15, 2018) (rejecting the notion that "mortgage protection provisions in CC&Rs could dissuade foreclosure-sale bidders, reasoning that, "[i]n light of [NRS 116.1104], the CC&Rs are not sufficient to create a genuine issue of material fact as to unfairness.").

[43] The bank's supplemental reliance on the Nevada Supreme Court's unpublished decision in *Lahrs Family Trust v. JP Morgan Chase Bank*, 2019 WL 4054161 (Nev. Aug. 27, 2019), ECF No. 109, does not improve its argument. Though *Lahrs* also involved an accounts-receivable agreement with First 100, the price disparity was far greater ($100 to $374,000) and the record revealed a lack of competitive bidding and possible collusion. *Lahrs*, 2019 WL 4054161 at *1. *Lahrs* is thus too factually distinguishable for me to apply here.

### 3. Nevada's HOA-foreclosure scheme did not violate the bank's due-process rights.

The bank's third and final argument for summary judgment is that Nevada's HOA foreclosure scheme did not require HOAs to inform mortgage lenders of the amount of the superpriority portion of the lien or the risk to their deeds of trust.[44] Both the Nevada Supreme Court and the Ninth Circuit Court of Appeals have held that this statutory scheme required constitutionally adequate notice.[45] The bank also received actual notice of this sale.[46]

As explained *supra*, the law presumes that the bank knew that NRS 116.3116(2) meant that unpaid HOA assessments put their first deed of trust at risk; due process did not require the HOA to tell the bank what the law already did. And the fact that the notice did not disclose the superpriority amount is of no legal consequence because NRS Chapter 116 also gave lienholders like the bank notice that the HOA may have a superpriority interest that could extinguish their security interests, putting them on inquiry notice.[47] Because the bank knew of the risk to its interest, it could have sued to determine the superpriority amount, attended the HOA sale and bid on the property, or paid the entire lien amount and sued for a refund.[48] As the Nevada Supreme

---

[44] ECF No. 96 at 8–9.

[45] *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019); *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).

[46] ECF No. 97-1 at 103 (deposition of HSBC's FRCP 30(b)(6) witness, Keith Kovalic, at 44:4–16, in which he acknowledges that HSBC's business records contain a note that a letter dated 8/6/12 was received from United Legal Services and referenced the amount due).

[47] *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, 2016 WL 1298108, at *7, 9 (D. Nev. Mar. 31, 2016) (concluding that "[d]ue process does not require an HOA to state the superpriority amount in the foreclosure notice and lienholders have meaningful opportunities to preserve their interests in the property").

[48] *See, e.g., Bank of New York Mellon v. Nevada Ass'n Servs., Inc.*, 2019 WL 2427938, at *5 (D. Nev. June 10, 2019).

10

1 Court noted when rejecting this same argument in *SFR I*, "it is well established that due process
2 is not offended by requiring a person with actual, timely knowledge of an event that may affect a
3 right to exercise due diligence and take necessary steps to preserve that right."[49]  As the bank had
4 notice—both from the notice of foreclosure sale and NRS Chapter 116—that its deed of trust
5 was in jeopardy and an opportunity to protect that interest, the bank cannot establish a due-
6 process violation here.  This inability to prove this due-process-violation theory compels the
7 denial of HSBC's motion and entitles SFR to summary judgment in its favor.[50]

**C.     SFR's Motion for Summary Judgment [ECF No. 97]**

SFR contends that handful of presumptions in Nevada law establish that the foreclosure sale was valid and extinguished the bank's deed of trust.  It first argues that NRS 116.31166(3) bars the bank's equitable quiet-title claim by stating that an HOA foreclosure sale under Chapter 116 "vests in the purchaser the title of the unit's owner without equity or right of redemption."[51] SFR explains that this statute means that the bank has no right to redeem, which is "consistent with long-standing Nevada non-judicial foreclosure law that 'if the sale is properly, lawfully[,] and fairly carried out, the Bank cannot unilaterally create a right of redemption in itself.'"[52]

There is much wrong with SFR's argument.  First, it purports to quote "NRS 116.3166(3)," but there is no such provision; SFR likely means to reference NRS 116.31*1*66(3). But subsection (3) of NRS 116.31166 does not contain the language that SFR quotes.  Though subsection (1) comes close, it does not reference equity and states instead that "Every sale of a

---

[49] *SFR I*, 334 P.3d at 418 (quoting *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995)).

[50] SFR moves for this specific relief in its own motion for summary judgment.  *See* ECF No. 97 at 9.

[51] ECF No. 97 at 10.

[52] *Id*. (quoting *Golden v. Tomiyasu*, 387 P.2d 989, 997 (Nev. 1963)).

11

unit pursuant to NRS 116.31162 to 116.31168, inclusive, vests in the purchaser the title of the unit's owner subject to the right of redemption provided by this section."[53] SFR then purports to explain what a sale "without equity or right of redemption" does "[a]ccording to the Nevada Supreme Court" but then block-quotes from a United States Bankruptcy Court opinion.[54]

Regardless, the bank is not pursuing a redemption right here, it is pursuing an equitable quiet-title claim. And the Nevada Supreme Court expressly held in *Shadow Wood* that "courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate despite NRS 116.31166" because "the Legislature, through NRS 116.31166's enactment, did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals."[55] So SFR's contention that NRS 116.3166(3) somehow bars this action is meritless.

Finally, SFR argues that other presumptions in Nevada law and conclusive recitals in the foreclosure deed mean that the burden is on the bank to prove that the sale is invalid—a burden that HSBC can't satisfy. But this argument gets SFR nowhere on this record. Even SFR acknowledges that these presumptions may be overcome by evidence that the sale was affected by fraud, unfairness, or oppression,[56] or pre-sale satisfaction of the lien. And, as I found above, there are genuine issues of fact whether this foreclosure sale falls into one of those categories.[57]

---

[53] Nev. Rev. Stat. § 116.31166(1).

[54] *See* ECF No. 97 at 10 (quoting *In re Grant*, 303 B.R. 205, 209 (Bankr. D. Nev. 2003)). That bankruptcy court opinion quotes a 150-year-old Nevada Supreme Court decision.

[55] *Shadow Wood*, 366 P.3d at 1111–12.

[56] ECF No. 104 at 6 at n. 15 (citing *Resources Group*, 437 P.3d at 156).

[57] *See supra* at pp. 6–9.

12

So SFR is not entitled to summary judgment in its favor based on Nevada-law presumptions or deed recitals.[58]

**D.    SFR's Application for Default Judgment against Shu Qiong Xu [ECF No. 95]**

SFR also asks for a default judgment declaring that foreclosed-upon homeowner Shu Qiong Xu has no right, title, or interest in the property. Because the bank's *Shadow Canyon* theory is still pending, there remains the possibility that the foreclosure sale could be set aside. Unless and until the respective interests of the bank and SFR are decided, a determination of Xu's rights vis-à-vis SFR would be premature. So I deny SFR's motion for default judgment against Xu without prejudice to SFR's ability to refile that request after the bank's *Shadow Canyon*-based quiet-title claim is resolved.

**Conclusion**

IT IS THEREFORE ORDERED that:

- HSBC Bank's Motion for Summary Judgment **[ECF No. 96] is DENIED**.

- SFR Investments Pool 1, LLC's Renewed Motion for Summary Judgment **[ECF No. 97] is GRANTED in part and DENIED in part. Partial summary judgment is entered in favor of SFR on the Bank's due-process-violation theory, but the motion is denied in all other respects.** The court finds that FRCP 54(b) certification of this decision on this small portion of this case is not merited.

- SFR's Application for Default Judgment against Shu Qiong Xu **[ECF No. 95] is DENIED** without prejudice.

---

[58] The inconclusive state of the record also precludes an order expunging the lis pendens, so I deny SFR that requested relief.

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference.** The parties' obligation to file their proposed joint pretrial order is tolled until 10 days after the settlement conference.

Dated: March 9, 2020

_____
U.S. District Judge Jennifer A. Dorsey